# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

D.J.Y., by and through his Next
Friend, Kelly York,

                Plaintiff,

v.

Ypsilanti Community Schools,
Sharron Irvine, Paula Sizemore,
Kimberly Ferrell, Ann Robinson,
Thomas Woodard, Washtenaw
County, Aaron Hendricks, Katrina
Bourdeau, and Jasmine Gates,

                Defendants.

Case No. 14-cv-11467
Hon. Judith E. Levy
Mag. Judge David R. Grand

_____/

## OPINION AND ORDER GRANTING DEFENDANTS YPSILANTI COMMUNITY SCHOOLS, SHARRON IRVINE, PAULA SIZEMORE, KIMBERLY FERRELL, ANN ROBINSON, THOMAS WOODARD, WASHTENAW COUNTY, AARON HENDRICKS, AND KATRINA BOURDEAU'S MOTIONS FOR JUDGMENT ON THE PLEADINGS [51, 56, 57]

Pending before the Court are defendants Ypsilanti Community
Schools, Sharron Irvine, Paula Sizemore, Kimberly Ferrell, Ann
Robinson, Thomas Woodard, Washtenaw County, Aaron Hendricks, and

Katrina Bourdeau's motions for judgment on the pleadings.[1] (Dkts. 51, 56, 57.)  Pursuant to E.D. Mich. Local R. 7.1(f)(2), the Court will decide the motion without oral argument.

## I.    Background

On April 17, 2012, plaintiff, then a thirteen-year-old student at Ypsilanti Middle School, was accused by a fellow female student of inappropriately touching her in the hallway.  Ann Robinson, a teacher at the school, removed plaintiff from his fourth-hour art class and required plaintiff to go to Assistant Principal Paula Sizemore's office.

Plaintiff alleges that Robinson and/or Sizemore threatened him with criminal prosecution, falsely told him that he had been caught committing a criminal act on videotape, and demanded he write out a statement concerning the incident.[2]  Plaintiff further alleges that he

---

[1] The motion that Washtenaw County, Hendricks, and Bourdeau filed is improperly termed a "Motion to Dismiss."  (Dkt. 51.)  The parties, however, filed the motion after filing an answer.  Pursuant to Fed. R. 12(c), the Court will treat the motion, filed after the pleadings were closed, as a motion for judgment on the pleadings.

[2] Plaintiff's complaint first states that Robinson made these statements and demands (Dkt. 40 at ¶ 21), then states that the statements and demands were Sizemore's.  (Id. at ¶ 25.)  In light of the remainder of the complaint, the Court will read paragraph 21 as intending to reference Sizemore rather than Robinson.

had asked for his mother to be present at the time Robinson questioned him. Plaintiff claims that Sizemore forced him to stay in her office against her will, and that he refused to sign a statement confessing to the crime.

Plaintiff did write out a single statement stating only that "I did not do it." (Dkt. 40 at ¶ 27.) At some point, someone at the school called plaintiff's mother, who came to the school. Plaintiff's mother then removed plaintiff from the school until a videotape of the incident, which plaintiff and his mother believed would exonerate him, was reviewed.

On April 18, 2012, plaintiff's mother telephoned Sizemore to ask if she had reviewed the video footage. Sizemore was unavailable, and plaintiff alleges that Sizemore did not return his mother's call despite the fact that she left a message requesting a return phone call. On April 19, 2012, plaintiff's mother attempted to speak to Sizemore via telephone again; Sizemore was again unavailable, and plaintiff's mother left a second message.

Later on April 19, 2012, plaintiff's mother went to the school to speak to Sizemore. The two met for thirty-five minutes, during which

time Sizemore stated that she had not yet been able to view the video. On April 20, 2012, plaintiff's mother again called Sizemore to inquire whether Sizemore had viewed the video; Sizemore was again unavailable and did not return the call.

On April 23, 2012, plaintiff's mother went to the school for a second time to speak to Sizemore. Plaintiff's mother was informed that Sizemore was unavailable to speak to her. On April 24, 2012, plaintiff's mother called Sizemore again, and again Sizemore was unavailable. Later on April 24, 2012, plaintiff's mother went to the school and spoke with Principal Ferrell about whether the video of the incident had been reviewed. Ferrell informed plaintiff's mother that she was unaware of the incident.

On April 26, 2012, plaintiff's mother went to the school to speak to Sizemore a third time. Plaintiff alleges that Sizemore refused to speak to his mother. Plaintiff's mother then left the school and went to the administration building, where she spoke with Sharron Irvine, the Director of Human Resources. Plaintiff's mother informed Irvine of the situation, and her concerns about the investigation.

4

On the evening of April 26, 2012, Sizemore telephoned plaintiff's mother. Sizemore informed her that she had viewed the video, but that it was "hard to make out" and that the school had to "clean it up" to look at it from different angles. (Dkt. 40 at ¶ 48.) At the end of the call, Sizemore and plaintiff's mother agreed to meet on April 27, 2012 to review the video.

Meanwhile, on April 26, 2012, plaintiff alleges that Sizemore contacted Deputy Aaron Hendricks, a Washtenaw County Sheriff's Department liaison officer for the school, and informed him of the allegation. Plaintiff further alleges that Sizemore did not inform Deputy Hendricks that a videotape existed of the incident. That day, Deputy Hendricks initiated a complaint against plaintiff in the Washtenaw County Circuit Court, entitled a Request for Delinquency Proceedings. At some point in May 2012, Deputy Katrina Bourdeau, another Washtenaw County Sheriff's Department employee, authorized the petition.

On April 27, 2012, plaintiff alleges that Sizemore called his mother and stated that plaintiff was "off the hook" and that the video showed "another little boy grabbing her." (Id. at ¶ 56.) Sizemore is also

alleged to have told Deputy Hendricks that plaintiff did not commit the crime at issue.

Plaintiff returned to Ypsilanti Middle School at some point between May 1, 2012, and May 4, 2012. During that timeframe, Thomas Woodard, a teacher at Ypsilanti Middle School, stopped plaintiff and asked him various questions about the incident. Plaintiff alleges that Woodard also witnessed the April 17, 2012 incident.

On May 16, 2012, Deputy Hendricks allegedly contacted plaintiff's mother to discuss additional allegations against plaintiff. Plaintiff's mother again removed plaintiff from school "for his own protection and safety." (Id. at ¶ 65.) At that point, Deputy Hendricks had not, according to plaintiff, interviewed plaintiff.

On July 24, 2012, Deputy Bourdeau signed off on the delinquency proceedings against plaintiff. In August 2012, plaintiff was formally charged with "CSC Fourth Degree – Forcible Contact," a criminal offense. (Id. at ¶ 75.) On September 14, 2012, plaintiff and his mother went to Washtenaw County Circuit Court for a preliminary inquiry that was adjourned.

6

Also on September 14, 2012, plaintiff's mother requested a copy of the video footage of the incident from Irvine. That evening, Irvine informed plaintiff's mother that the video footage had been deleted.

On February 27, 2013, Deputy Hendricks met with the victim of the incident. At that meeting, the victim admitted that plaintiff had not inappropriately touched her. On March 27, 2013, the case against plaintiff was dismissed.

Plaintiff filed suit on April 10, 2014. On October 7, 2014, the Court granted Washtenaw County, Bourdeau and Hendricks' motion to dismiss (Dkt. 17) without prejudice, and granted leave to plaintiff to amend his complaint by October 28, 2014. (Dkt. 39.) Plaintiff filed his amended complaint on October 28, 2014. (Dkt. 40.)

Defendants Ferrell, Irvine, Robinson, Sizemore, Woodard, Bourdeau, Hendricks, Washtenaw County, and Ypsilanti Community Schools filed their answer on November 10, 2014. (Dkts. 41, 45.) Defendants Bourdeau, Hendricks, and Washtenaw County filed their motion for judgment on the pleadings on December 2, 2014. (Dkt. 51.) Defendant Sizemore filed her motion for judgment on the pleadings on December 19, 2014. (Dkt. 56.) Defendants Ferrell, Irvine, Robinson,

7

Woodard and Ypsilanti Community Schools filed their motion for judgment on the pleadings on December 19, 2014. (Dkt. 57.) The Court has already dismissed defendant Jasmine Gates from this suit. (Dkt. 67.)

The motions are now fully briefed.

## II.   Legal Standard

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is analyzed using the same standard as for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Tucker v. Middleburg–Legacy Place,* 539 F.3d 545, 549 (6th Cir. 2008).

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir.2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

III.   Analysis

Plaintiff alleges the following counts against the following defendants:

1) False Arrest/Imprisonment under Michigan law against defendants Sizemore, Robinson, Woodard, Deputy Hendricks and Deputy Bourdeau.

2) Malicious Prosecution under Michigan law against Sizemore, Deputy Hendricks, and Deputy Bourdeau.

3) Unreasonable Search and Seizure under the Fourth Amendment against Sizemore, Robinson, Woodard, Deputy Hendricks, and Deputy Bourdeau.

4) Malicious Prosecution under the Fourth Amendment against Sizemore, Deputy Hendricks, and Deputy Bourdeau.

5) Constitutional Violations against Ypsilanti Community Schools and Washtenaw County.

6) Gross Negligence against Irvine, Sizemore, Ferrell, Robinson, Woodard, Deputy Hendricks, and Deputy Bourdeau.

7) Violation of Fourteenth Amendment Due Process Rights against Irvine, Sizemore, Ferrell, Robinson, Deputy Hendricks, and Deputy Bourdeau.

9

A. False Arrest

A false-arrest claim under Michigan law requires the plaintiff to show that defendants "participated in an illegal and unjustified arrest, and that [the defendants] lacked probable cause to do so." *Walsh v. Taylor,* 689 N.W.2d 506, 513 (Mich. Ct. App. 2004).   Plaintiff alleges that the following acts constituted arrests:

**Sizemore**: Plaintiff alleges that Sizemore falsely arrested him on April 17, 2012 by calling him to her office, not permitting him to leave, and doing so without a parent present.

**Robinson**: Plaintiff alleges that Robinson falsely arrested him on April 17, 2012 by taking him from his class and to Sizemore's office against his will, forcing him to be interrogated.

**Woodard**: Plaintiff alleges that Woodard falsely arrested him at some time between May 1, 2012 and May 4, 2012, by stopping him in the hallway and questioning him about the allegations.

**Deputy Hendricks**: Plaintiff alleges no act that could arguably constitute an arrest, only that Deputy Hendricks initiated a complaint in Washtenaw County Circuit Court without having reviewed the videotape at issue.

10

**Deputy Bourdeau**: Plaintiff alleges no act that could arguably constitute an arrest, only that Deputy Bourdeau signed off on the complaint that initiated the delinquency proceedings against plaintiff in the Washtenaw County Circuit Court.

To state a claim for false arrest, plaintiff must establish, at the very least, that he was arrested by the party or parties accused of false arrest. Plaintiff has alleged no fact that would give rise to a plausible claim that Hendricks and Bourdeau arrested him. As a threshold matter, the Court must dismiss this claim against Hendricks and Bourdeau.

Robinson, Sizemore, and Woodard argue that they are entitled to governmental immunity under Michigan law. Robinson and Woodard also argue that they committed no acts constituting an arrest.

A governmental actor who is not a judge, a legislator, or the highest-ranking appointed executive official and claims governmental immunity under Michigan law must show that "(a) [t]he acts he undertook were in the course of his [or her] employment, and he was acting, or reasonably believed that he was acting, within the scope of his authority, (b) he undertook the acts in good faith and without

11

malice, and (c) the acts were discretionary rather than ministerial." *Odom v. Wayne Co.*, 482 Mich. 459, 480 (2008).

Plaintiff does not dispute that Robinson, Sizemore, and Woodard satisfy the first and third prongs of the governmental immunity test. Instead, plaintiff argues only that the question of good faith versus malice is reserved to the jury. "Unlike probable cause, the question of 'malice' is to be determined by the jury, unless only one conclusion may reasonably be drawn from the evidence." William Prosser, Torts (4th ed), § 119, pp 848-849. Accordingly, the Court may reach the issue whether plaintiff has set forth a plausible claim of malice, or whether only one conclusion may reasonably be drawn from the allegations in the complaint.

> i.   Robinson

Robinson is alleged to have escorted plaintiff to Sizemore's office so that Sizemore could discuss an allegation of criminal activity with plaintiff. The Court may draw only one reasonable conclusion from the facts plaintiff presents, and it is that Robinson acted in good faith. Robinson, in her capacity as a teacher at Ypsilanti Middle School, assisted Sizemore in speaking to a student accused of a criminal act.

There are no facts alleged that would give rise to any plausible claim that Robinson acted out of malice on April 17, 2012. Plaintiff argues only that he did not want to go to Sizemore's office. However, a student's unwillingness to go to an administrator's office to discuss a disciplinary issue is insufficient, on its own, to give rise to the possibility of malice necessary to sustain a false arrest claim.

Accordingly, the Court finds that, even had plaintiff stated a viable claim for false arrest, Robinson is entitled to governmental immunity with regard to this claim and dismisses the false arrest claim against Robinson.

### ii.   Sizemore

Sizemore is alleged to have kept plaintiff in her office, questioned him against his will, and done so without his parent present on April 17, 2012. Much as with Robinson, no facts are alleged giving rise to any plausible claim that Sizemore acted with malice. Sizemore believed at the time that plaintiff had potentially committed a criminal act, and in her discretion requested that her report to her office to discuss the alleged incident.

13

Plaintiff also alleges in his complaint that Sizemore was "in part[] the cause of Plaintiff D.J.Y.'s false arrest because she contacted police agencies and advised them that Plaintiff D.J.Y. had committed a crime despite the fact that she had a videotape in her possession (which she had not reviewed) which did not show Plaintiff D.J.Y. involved in the criminal acts he was falsely accused of."  (Dkt. 40 at ¶ 89.)  However, plaintiff does not allege that the police arrested him.  This cannot be the basis for a false arrest claim.

Because plaintiff fails to plead any fact which would give rise to a plausible claim of malice against Sizemore, even had plaintiff stated a viable claim for false arrest, Sizemore is entitled to governmental immunity with regard to this claim and the false arrest claim against her is dismissed.

        iii.   Woodard

Plaintiff alleges that Woodard stopped him in the hallway during school hours at some point between May 1 and May 4, 2012, to discuss the allegations surrounding the incident.  Plaintiff also alleges that Woodard witnessed the original April 17, 2012 incident.

14

Again, plaintiff fails to allege any facts that would give rise to a plausible claim of malice on the part of Woodard. Particularly here, where Woodard allegedly witnessed the incident, Woodard's questioning of plaintiff about the allegations alone cannot give rise to a question of whether he acted with malice. This is particularly true where plaintiff alleges only that he did not want to talk to Woodard, but fails to allege that Woodard acted or intended to act in a way that would or did harm plaintiff. It is understandable that plaintiff would not want to discuss false charges against him with a teacher. It is not, however, indicative of malice that a teacher asked a student about an incident the teacher witnessed.

Accordingly, even had plaintiff stated a viable claim for false arrest, Woodard is entitled to governmental immunity with regard to this claim and the false arrest claim against Woodard is dismissed.

B. False Imprisonment

False imprisonment requires the plaintiff to show "(1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement." *Walsh,* 689 N.W.2d at 514. The plaintiff

15

must also show that "[t]he restraint . . . occurred without probable cause to support it." *Id.*

Plaintiff's complaint conflates his false arrest and false imprisonment claims. In his responses, plaintiff states that his claim for false imprisonment rests on plaintiff having been "removed from the Ypsilanti Public Schools and confined to his home for his own safety and integrity." (Dkt. 59 at 16; Dkt. 62 at 23; Dkt. 63 at 22 (citing Dkt. 40 at ¶¶ 32, 65).) However, plaintiff states that his mother initially removed him from school, and that he was once again removed from school by his mother on or around May 16, 2012.

A claim for false imprisonment requires that the accused have committed some act with the intention of confining another. Plaintiff alleges no such act on the part of any defendant. No defendant is alleged to have required, suggested, or even implied that plaintiff's mother should have removed him from school. No defendant is alleged to have committed any act with the intention that plaintiff's mother remove him from school and confine him to his home.

Because plaintiff has failed to allege any act committed with the intention of confining him other than his mother's voluntary removal of

16

plaintiff from school, the false imprisonment claim is dismissed against all individual defendants.

C. Malicious Prosecution (Michigan Law)

Under Michigan law, a plaintiff asserting malicious criminal prosecution has the burden of proving "(1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Matthews v. Blue Cross & Blue Shield of Mich.*, 456 Mich. 365, 378 (1998).

Malicious prosecution generally only applies to private citizens. *See, e.g., Ringo v. Richardson*, 88 Mich. App. 684, 690 (1979) (evaluating a citizen's satisfaction of the probable cause standard). "[T]he only situation in which an action for malicious prosecution [against a police officer] would properly lie is where a police officer knowingly swears to false facts in a complaint, without which there is no probable cause.'" *King v. Arbic,* 159 Mich. App. 452, 466 (1987).

17

Defendants Hendricks and Bourdeau are deputy sheriffs. Plaintiff does not allege that either knowingly swore to false facts in the complaint, only that their investigation of the incident was conducted in a hasty and incomplete manner. Accordingly, the Court dismisses the malicious prosecution claim against Deputies Hendricks and Bourdeau.

The only remaining defendant under this count is Sizemore. "[T]he plaintiff's burden in a malicious prosecution case is to make a prima facie showing that the defendant . . . lacked probable cause to believe that the plaintiff had committed a crime." *Matthews*, 456 Mich. at 379. "To constitute probable cause . . . there must be such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautious man in the belief that the person arrested is guilty of the offense charged." *Id*. at 387 (citing *Wilson v. Bowen*, 64 Mich. 133, 138 (1887).

At the time that Sizemore contacted the police on April 26, 2012, plaintiff alleges that Sizemore had viewed the allegedly exonerating video, but that she believed it was "hard to make out" what happened. (Dkt. 40 at ¶ 48.) Sizemore then contacted the police based in large part on the accusation of the female student that plaintiff, specifically,

18

was the one who had inappropriately touched her.  In the light most favorable to plaintiff, the facts as set forth by plaintiff show that Sizemore had probable cause to believe that plaintiff committed a crime on April 26, 2012.

Despite plaintiff's contention that Sizemore was under a duty to view the video, "once probable cause is established, an [official] is under no duty to look further for additional evidence which may exculpate the accused." *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999).

Further, a private individual accused of malicious prosecution cannot be found to have initiated the prosecution where the prosecutor or police conduct their own investigation independent of the defendant's statement.  *Matthews*, 456 Mich. at 386; *Christy v. Rice*, 152 Mich. 563, 565 (1908); *Renda v. Int'l Union, UAW*, 366 Mich. 58, 91 (1962).  Here, plaintiff alleges that the police "interviewed many teachers and others," (Dkt. 66), that the police did not sign the complaint until July 24, 2012, and that the prosecutor did not formally charge plaintiff until August 2012.

Plaintiff has not adequately pleaded that Sizemore did not have probable cause to contact the police.  Even if Sizemore did not have

probable cause, plaintiff has demonstrated that the police conducted an independent investigation in the weeks and months after Sizemore contacted the police. Accordingly, the malicious prosecution claim against Sizemore is dismissed.

D. Unreasonable Search and Seizure in Violation of the Fourth Amendment

"In assessing whether the right against unreasonable searches and seizures has been violated, the court must consider whether the action is attributable to the government, and amounts to a search or seizure for Fourth Amendment purposes." *Relford v. Lexington-Fayette Urban Cnty. Gov't*, 390 F.3d 452, 457 (6th Cir. 2004.)

Although termed a claim for unreasonable search and seizure, plaintiff alleges only seizures on the part of Robinson, Sizemore, Woodard, Deputy Hendricks, and Deputy Bourdeau. The seizures alleged are the same acts serving as the basis for plaintiff's false arrest claims.

A person is seized for the purposes of the Fourth Amendment "only when, by means of physical force or a show of authority, his freedom of movement is restrained." *U.S. v. Mendenhall*, 446 U.S. 544, 553 (1980). Under this standard, plaintiff has failed to plead that either

Deputy Hendricks or Deputy Bourdeau seized him. Neither officer is alleged to have committed any act that, by means of physical force or a show of authority, restrained plaintiff's movement.  Instead, both are alleged only to have investigated the incident and brought charges against plaintiff, neither of which constitute a seizure under the Fourth Amendment.  Accordingly, this claim is dismissed against Hendricks and Bourdeau.

"[A] school official may detain a student if there is a reasonable basis for believing that the pupil has violated the law or a school rule." *S.E. v. Grant Cnty. Bd. of Educ.*, 544 F.3d 633, 641 (6th Cir. 2008) (quoting *Wofford v. Evans,* 390 F.3d 318, 326 (4th Cir.2004)).  In a school setting, a "reasonable suspicion" standard is applied to Fourth Amendment claims rather than a "probable cause" standard.  *Safford United Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009).  Plaintiff argues that there was no reasonable basis for believing that he committed any violation of the law or any school rule, because a video existed that should have immediately exonerated him.

In *S.E.*, the Sixth Circuit determined that, when a school's assistant principal was contacted by a student's parent regarding

21

another student's violation of school rules on the final day of the school year in May, the Fourth Amendment was not violated when the assistant principal summoned the students to his office in August to discuss what had happened.  *S.E.*, 544 F.3d at 641.

Here, assistant principal Sizemore called plaintiff to her office the same day as the incident, and questioned him about it.  She called him to the office based both on the allegation of another student and a videotape that plaintiff contends exonerated him, but that plaintiff states (repeatedly) Sizemore did not actually view until nine days later.  Plaintiff has cited no authority that stands for the premise that an incomplete investigation by a school official alone, coupled with questioning based on the incomplete investigation, constitutes a violation of the prohibition against unreasonable seizure.   Under plaintiff's version of the facts, Sizemore had a reasonable basis for calling plaintiff to her office – the accusation of another student that he had committed a criminal act.

Likewise, the seizure claim against Robinson must fail.  Robinson took plaintiff out of class and escorted him to Sizemore's office on the same reasonable suspicion that Sizemore held: that plaintiff, having

been accused by another student of committing a criminal act, may have in fact committed that act.

Plaintiff's claim against Woodard is based on his allegation that, on a day in early May, Woodard stopped him in the hallway and asked him questions about the allegations.  In his response brief, plaintiff states only that Woodard "unlawfully detained Plaintiff when there was no need to do so."  (Dkt. 63 at 17.)  Plaintiff does not state what the nature of the questioning was, how long the questioning lasted, or whether the questioning could have resulted in any further disciplinary action against plaintiff.  Plaintiff does not allege any physical contact by Woodard.  In essence, plaintiff is arguing that any conversation a teacher holds with a student during which the student feels as if he or she cannot immediately walk away constitutes a potential Fourth Amendment violation.

A lessened standard under the Fourth Amendment applies to school teachers and officials because schools act, in many instances, *in loco parentis*.  Teachers and school officials are responsible for the education and well-being of their students, and during the course of a routine school day, the freedom of students is restricted in any number

of ways, both formally and informally, without violation of the Fourth Amendment.  Students are required to show up to classes and other mandatory activities during school hours.  Most primary and secondary students are required to request permission to do things such as use the bathroom, eat outside of designated meal times, or even wear clothes not approved by the school.  As the Supreme Court has stated, "maintaining . . . order in the schools requires a certain degree of flexibility in school disciplinary procedures, and we have respected the value of preserving the informality of the student-teacher relationship." *New Jersey v. T.L.O.*, 469 U.S. 325, 340 (1985).

Plaintiff cannot plausibly state that the act of a teacher he alleges witnessed an incident asking him (apparently briefly) about the incident constitutes a violation of the Fourth Amendment prohibition against unreasonable seizures.  To do so would be to turn many conversations between students and teachers into seizures for the purposes of the Fourth Amendment.

Accordingly, the unreasonable seizure claim is dismissed against Sizemore, Robinson, Woodard, Deputy Hendricks, and Deputy Bourdeau.

24

E. Malicious Prosecution Under the Fourth Amendment

> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure.  Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (internal citations and quote marks omitted).

Plaintiff's claim against Sizemore, Deputy Hendricks, and Deputy Bourdeau fails because he can show no deprivation of liberty following the initial alleged seizure by Sizemore.   Plaintiff argues that "he was under the Court's scrutiny for just under a year and was required to attend numerous court proceedings, thereby causing him to miss numerous days of school." (*See, e.g.*, Dkt. 62 at 20.)

25

The "numerous court proceedings" are referenced nowhere in plaintiff's complaint. Instead, plaintiff alleges only that he showed up for a single adjourned hearing on September 14, 2012. (Dkt. 40 at ¶ 76.) Under applicable Fourth Amendment precedent, this is inadequate to constitute a "deprivation of liberty." *See, e.g., Hopkins v. Sellers,* Case No. 09-cv-304, 2011 WL 2173859, at *9 (E.D. Tenn. June 2, 2011) (malicious prosecution claim failed where plaintiff could not show deprivation of liberty because he "was never arrested, never jailed, never detained, never required to post bond, and never placed under travel restrictions"); *Briner v. City of Ontario,* Case No. 07-cv-127, 2011 WL 866464, at *4 (N.D. Ohio Mar. 9, 2011) (malicious prosecution claim failed where plaintiff could not show deprivation of liberty because she "was issued a summons; she was not arrested. There was no bond required and there is nothing in the record to suggest that she had any restrictions placed on her movements prior to trial."); *see also Rogers v. O'Donnell*, Case No. 10-cv-373, 2012 WL 1831242, at *1 (E.D. Ky. May 18, 2012) (holding that there was no deprivation of a liberty interest where plaintiffs were never arrested or incarcerated).

26

Plaintiff does not allege that he was arrested, or that any government official put any restrictions on his movement. Instead, he alleges that he went to a single adjourned hearing that he was free to leave following the adjournment. Further, plaintiff cannot bring a viable claim for malicious prosecution when the charges against him were voluntarily dismissed. *Cheolas v. City of Harper Woods*, 467 Fed. Appx. 374, 378 (6th Cir. 2012) (holding that there was no viable claim for malicious prosecution where all charges were dropped against a plaintiff who was never arrested).

Accordingly, the malicious prosecution claim under the Fourth Amendment against Sizemore, Deputy Hendricks, and Deputy Bourdeau is dismissed.

F. Gross Negligence

Plaintiff asserts an independent claim for gross negligence against a government official under M.C.L. § 691.1407(2). "Although establishing that a governmental official's conduct amounted to 'gross negligence' is a prerequisite to avoiding that official's statutory governmental immunity, it is not an independent cause of action." *Bletz*

*v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011) (citing *Van Vorous v. Burmeister*, 262 Mich. App. 467, 483 (2004)).

Plaintiff's gross negligence claim is not viable under Michigan law. Accordingly, the claim against all individual defendants is dismissed.

G. Violation of Due Process Under the Fourteenth Amendment

Plaintiff argues that Irvine, Sizemore, Ferrell, Robinson, Deputy Hendricks, and Deputy Bourdeau violated both his substantive and procedural due process rights under the Fourteenth Amendment. Plaintiff argues that their actions "shock[ed] the conscience," and thus offended his substantive due process rights. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). In particular, he argues that these defendants' actions violated his fundamental liberty interest in his freedom and uninterrupted education.

Plaintiff cites no basis for the proposition that his "uninterrupted education" constitutes a fundamental liberty interest for the purposes of the Fourteenth Amendment. As defendants argue, "[t]he right to attend public school is not a fundamental right for the purposes of due process analysis." *Seal v. Morgan*, 220 F.3d 567, 575 (6th Cir. 2000). Even were it a basis, defendant would still fail to show that any

28

defendant committed any act or failed to commit any act that interrupted his education. The only times during which plaintiff's education was arguably interrupted were the times when his mother voluntarily pulled him out of school, without suggestion or requirement issued by any defendant.

Plaintiff argues that his "freedom" also constitutes a fundamental liberty interest. However, the Court cannot discern from either the complaint or plaintiff's briefing what fundamental right under the Fourteenth Amendment "freedom" implicates that is not already covered in plaintiff's non-viable Fourth Amendment claims.

"To make out a claim for a violation of procedural due process, the plaintiff has the burden of showing that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).

Plaintiff fails to argue that any violation of his procedural due process rights occurred, other than the deprivation of his non-

fundamental right to an uninterrupted education, and the violation of his alleged fundamental right of "freedom".  For the reasons stated above, neither constitutes a cognizable liberty interest under the Fourteenth Amendment.

In his complaint, plaintiff also refers to his liberty interests in "his own physical safety, his good name, his liberty, and property."  Plaintiff fails to allege any deprivation of his right to his physical safety, his liberty, or his property.  Further, the interest in reputation does not constitute either liberty or property guaranteed against state deprivation without due process of law.  *Paul v. Davis*, 424 U.S. 693, 712 (1976).

Accordingly, the due process claim against Irvine, Sizemore, Ferrell, Robinson, Deputy Hendricks, and Deputy Bourdeau is dismissed.

H. Constitutional Violations

Finally, plaintiff alleges a variety of "constitutional violations" against Ypsilanti Community Schools and Washtenaw County.  The complaint makes no mention of these violations other than a list of alleged customs, policies, and/or practices that these defendants held in

30

the count itself. (Dkt. 40 at ¶ 148.) The list consists of: 1) failure to supervise employees to prevent violations of constitutional rights; 2) failure to adequately train or supervise employees regarding reasonable seizures; 3) failure to adequately train or supervise employees regarding lawful prosecution of a charge; 4) failure to control or discipline employees known to harass, intimidate, or abuse citizens; 5) failure to adequately train and/or supervise employees regarding appropriate investigations; 6) failure to supervise, review, or discipline employees whom defendants knew or should have known were violating or were prone to violate citizens' constitutional rights; and 7) failure to require compliance of employees with established policies, procedures, or rules and to discipline those who violate established policies.

The Court construes the above allegations as claims made under 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). "[T]o survive a motion to dismiss under Rule 12(b)(6) [on a § 1983 claim], a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to

31

happen." *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 660 (6th Cir. 2014).

Plaintiff failed to adequately plead that any violation of any federal right occurred, for the reasons stated above.   Because no violation of any federal right occurred, plaintiff cannot state a plausible claim for relief under § 1983.   Accordingly, the claim for "constitutional violations" is dismissed.

IV.   Conclusion

For the reasons stated above, it is hereby ordered that:

Defendants' motions to dismiss (Dkt. 51, 56, 57) are GRANTED; and

This case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: February 12, 2015          s/Judith E. Levy
Ann Arbor, Michigan               JUDITH E. LEVY
                                  United States District Judge

32

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 12, 2015.


s/Felicia M. Moses
FELICIA M. MOSES
Case Manager

33